PEOPLE v ADAIR

Docket No. 101286. Argued March 6, 1996 (Calendar No. 12). Decided
July 16, 1996.

William D. Adair was charged in the Jackson Circuit Court with two
counts of third-degree criminal sexual conduct in the sexual assault
of his wife. Before trial, the defendant moved in limine to introduce
specific instances of his wife's subsequent consensual sexual rela-
tions with him, marital common sexual practices, and her alleged
sexual relations with a third person. The court, Chad C.
Schmucker, J., precluded introduction of evidence of particular
marital sexual activities, but indicated that generalized evidence
that a sexual relationship had existed and of the complainant's sub-
sequent consensual sexual relations with the defendant within
thirty days of the alleged sexual assault would be allowed. The
Court of Appeals, McDonald, P.J., and Shepherd, J. (W. J. Giovan, J.,
dissenting), vacated the order, finding that evidence of subsequent
consensual sexual relations was barred by the rape-shield statute,
MCL 750.520j(1)(a); MSA 28.788(10)(1)(a). The Court further held
that exclusion of the evidence would not violate the defendant's
right of confrontation because the evidence had insufficient proba-
tive value, and limited evidence of sexual conduct to that occurring
before the alleged incident (Docket No. 165341). The defendant
appeals.

In an opinion by Justice Cavanagh, joined by Justices Boyle,
Riley, Mallett, and Weaver, the Supreme Court held:

Past sexual conduct refers to conduct that has occurred before
evidence is offered at trial. Remand to the trial court is required for
further proceedings with respect to admissibility of evidence of
subsequent consensual sexual relations between the complainant
and the defendant. The trial court did not abuse its discretion in
precluding the defendant from introducing evidence of prior con-
sensual digital-anal sexual activity, given its highly prejudicial
nature and its nonexistent probative value.

1. The rape-shield statute bars evidence of all sexual activity by
the complainant not incident to the alleged rape, except, inter alia,
evidence of the victim's past sexual conduct with the actor. The
term "past" is ambiguous. When proposed evidence relates to a

complainant's consensual sexual relations with the defendant, the public policy interests in excluding prejudicial, inflammatory, or misleading bad act character evidence are not the primary focus of the statute. Rather, the focus shifts to materiality and balancing probative value against prejudice. The touchstone of the rape-shield statute is relevance. Because the Legislature did not intend an arbitrary limit on relevant evidence, imposition of an arbitrary time limit would not faithfully further the legislative purposes of the statute. Thus, past sexual conduct refers to conduct that has occurred before the evidence is offered at trial.

2. The rape-shield statute further provides that evidence of consensual sexual relations is admissible only to the extent that it is material to a fact at issue and that its inflammatory or prejudicial nature does not outweigh its probative value. While the time interval between the consensual sexual relations and the alleged rape is an important factor, the nature of the relationship also should be considered. By the use of the term "unless and only to the extent that," the Legislature expressly limited admission of such evidence to what is necessary for the defense. Therefore, the trial court appropriately should limit the scope of sexual conduct evidence where constitutionally possible.

3. The fact that the couple engaged in digital-anal sexual activity during their marriage before the alleged assault is not probative of the defense theory that the alleged events never occurred. The right to confront and cross-examine is not without limits. It does not include a right to cross-examine on irrelevant issues. Exclusion of this evidence will not violate the defendant's constitutional rights.

Reversed and remanded.

Justice LEVIN, writing separately, stated that the probative value of the past consensual atypical sexual conduct outweighs any inflammatory or prejudicial nature of the past atypical sexual conduct. For the same reason that evidence of the victim's past normal sexual conduct with the actor is probative and admissible as an exception to the strictures of the rape-shield statute, evidence of past atypical sexual conduct between them is probative. Resolution of the factual dispute will depend on the jury's assessment of the credibility of the estranged complainant wife and defendant husband. If the evidence of consensual atypical sexual activity was highly prejudicial to a fair assessment of the wife's credibility, it was, by the same token, highly probative to a fair assessment of the husband's credibility.

Chief Justice BRICKLEY, concurring in part and dissenting in part, stated the proffered evidence does not fall within the exception to

the rape-shield statute permitting the admission of evidence of past sexual conduct because it deals with sexual conduct that occurred after the incident. Thus, it should not be admitted under the current wording of the statute. The case should be remanded to the trial court with instructions to apply the rule that "past" refers only to sexual conduct occurring before the alleged assault.

207 Mich App 287; 524 NW2d 256 (1994) reversed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Dennis Hurst*, Prosecuting Attorney, and *Christine A. Clancy*, Assistant Prosecuting Attorney, for the people.

*Lorin J. Zaner* and *Demosthenes Lorandos* for the defendant.

CAVANAGH, J. The defendant is charged with two counts of sexually assaulting his wife. This is an interlocutory appeal from a trial court order granting in part and denying in part, pursuant to the rape-shield statute, MCL 750.520j(1)(a); MSA 28.788(10)(1)(a), the defendant's motion in limine to introduce evidence of specific instances of the complainant's sexual conduct with the defendant both before and after the night of the alleged sexual assault. The trial court's order would allow the defendant to introduce evidence of the complainant's *subsequent* consensual sexual relations with him that had occurred within thirty days of the alleged sexual assault. The Court of Appeals vacated this portion of the order. 207 Mich App 287, 293; 524 NW2d 256 (1994). We granted the defendant leave to appeal. 450 Mich 874 (1995). We reverse and remand to the trial court in light of this opinion.

I

The defendant has been bound over for trial on two counts of third-degree criminal sexual conduct[1] on the basis of allegations made by his wife that he sexually assaulted her in the early morning hours of September 27, 1992. On October 28, 1992, the complainant testified at the preliminary examination that she had been served with divorce papers a few days before the alleged sexual assault. The defendant and complainant continued to share the same house at that point, along with their two children and her two children from a previous marriage. They had been married for six years. The complainant was sleeping in the basement on the night of the alleged sexual assault. She testified that she was awakened by the defendant in the early morning hours. The two counts of third-degree criminal sexual conduct are based on her allegations of digital-anal penetration and of digital-oral penetration by the defendant against her will. The defendant denies that the alleged incidents occurred.

At a pretrial hearing on October 23, 1992, the complainant stated that she had engaged in consensual sexual relations with the defendant after the alleged sexual assault.[2] The complainant has also stated that

---

[1] MCL 750.520d(1)(b); MSA 28.788(4)(1)(b).

[2] She testified:

> *Q.* And have you had any consensual sexual relations with your husband since September 27?
> *A.* There was a brief reconciliation at which time we did.
> *Q.* Subsequent to the alleged criminal offense you've had sexual relations with your husband willingly?
> *A.* Yes.
> *Q.* How many occasions?
> *A.* I don't remember.

digital-anal sexual activity was a common practice in the couple's marriage.

The defendant moved in limine to introduce evidence of specific instances of (1) the complainant's subsequent consensual sexual relations with him, (2) the marital common practice of digital-anal sexual activity, and (3) the complainant's alleged sexual relations with a third person. The trial court precluded proposed evidence of particular marital sexual activities, but would allow generalized testimony that a sexual relationship had existed, and would allow evidence of the complainant's subsequent consensual sexual relations with the defendant within thirty days of the alleged sexual assault.[3]

The prosecutor appealed, seeking to exclude evidence of subsequent consensual sexual relations. The defendant answered, again seeking to introduce evidence of the couple's particular marital sexual activity of digital-anal penetration.

The Court of Appeals majority found that evidence of subsequent consensual sexual relations was barred by the rape-shield statute. 207 Mich App 290. The majority further held that exclusion of the evidence would not violate the defendant's constitutional right of confrontation because the evidence had insufficient probative value. In contrast, the dissent believed that the evidence of subsequent consensual sexual relations was admissible under the rape-shield statute. The dissent further believed that it was admissi-

_Q._ More than five?
_A._ No.

[3] The court also precluded evidence of the complainant's alleged sexual conduct with any third party. The defendant has not challenged this portion of the order.

ble under the defendant's constitutional right of con-
frontation because it was probative of the defense
theory that the alleged incident "never occurred
because, if he had forcibly assaulted her as alleged,
she would not have agreed to have sex with him on
two occasions within a relatively short time thereaf-
ter." 207 Mich App 297 (Giovan, J., dissenting).

II

The rape-shield statute provides:

> Evidence of specific instances of the victim's sexual con-
> duct, opinion evidence of the victim's sexual conduct, and
> reputation evidence of the victim's sexual conduct shall not
> be admitted under sections 520b to 520g unless and only to
> the extent that the judge finds that the following proposed
> evidence is material to a fact at issue in the case and that
> its inflammatory or prejudicial nature does not outweigh its
> probative value:
>
> (a) Evidence of the victim's *past* sexual conduct with the
> actor.
>
> (b) Evidence of specific instances of sexual activity
> showing the source or origin of semen, pregnancy, or dis-
> ease. [MCL 750.520j(1);   MSA 28.788(10)(1)   (emphasis
> added).]

The defendant seeks to introduce evidence of both
prior and subsequent consensual sexual relations
with the complainant. Such evidence clearly falls
within the statute's general exclusionary rule. "It bars,
with two narrow exceptions, evidence of *all* sexual
activity by the complainant not incident to the alleged
rape." *People v Stull*, 127 Mich App 14, 17; 338 NW2d
403 (1983)  (emphasis in original).[4]

---

[4] See also *United States v Torres*, 937 F2d 1469, 1472 (CA 9, 1991)
(FRE 412 applies to all sexual behavior preceding trial); *Flurry v State*,

We turn first to the proposed evidence of subsequent consensual sexual relations. The defendant contends that this falls within the statutory exception for "[e]vidence of the victim's past sexual conduct with the actor."

### EVIDENCE OF PAST SEXUAL CONDUCT

Initially, we must determine to which period of time the term "past" refers: before the alleged sexual assault or before the evidence is offered at trial. The Court of Appeals majority held that "past" limited evidence of sexual conduct to that occurring before the alleged incident. 207 Mich App 291. The prosecutor argues here that this interpretation is correct. Conversely, the panel's dissent believed that "past" encompassed all sexual conduct occurring before the evidence was offered at trial. *Id.* at 293-294. The defendant agrees with the dissent.

As evidenced by this reasonable disagreement over the meaning of the statutory exception, we find that the term "past" is ambiguous. 2A Singer, Sutherland Statutory Construction (5th ed), § 45.02, p 6. The rules of statutory interpretation of ambiguous terms are well established. "The lodestar of statutory construction is legislative purpose or intent." *People v Gilbert*, 414 Mich 191, 205; 324 NW2d 834 (1982). When faced with two alternative reasonable interpretations of a word in a statute, we should give effect to the interpretation that more faithfully advances the

---

290 Ark 417, 419; 720 SW2d 699 (1986) (the statute applies to all sexual conduct); *Cuyler v State*, 841 SW2d 933, 936 (Tex App, 1992) (the statute applies to all sexual conduct occurring before trial); *State v Gulrud*, 140 Wis 2d 721, 729; 412 NW2d 139 (Wis App, 1987) (the statute precludes evidence of all sexual conduct occurring before the conclusion of the trial).

legislative purpose behind the statute. *People v Reh-kopf,* 422 Mich 198, 207; 370 NW2d 296 (1985).

In *People v Arenda,* 416 Mich 1, 10-11; 330 NW2d 814 (1982), we addressed the legislative purpose behind the rape-shield statute:

> The rape-shield law, with certain specific exceptions, was designed to exclude evidence of the victim's sexual conduct with persons *other than defendant.* Although such evidence was admissible at common law in relation to certain issues, this practice has repeatedly been drawn into question. The courts, with increasing frequency, have recognized the minimal relevance of this evidence . . . .
>
> *The prohibitions contained in the rape-shield law represent a legislative determination that, in most cases, such evidence is irrelevant. . . .*
>
> The prohibitions in the law are also a reflection of the legislative determination that inquiries into sex histories, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury. Avoidance of these dangers is a legitimate interest in the criminal trial process, see MRE 403. The prohibition indirectly furthers the same interests by removing unnecessary deterrents to the reporting and prosecution of crimes.
>
> At the same time, the prohibitions protect legitimate expectations of privacy. . . .
>
> The interests protected and furthered by the rape-shield law are significant ones. Given the minimal relevance of such evidence in most cases, the prohibitions do not deny or significantly diminish defendant's right of confrontation. [Emphasis added; citations omitted.]

The rape-shield statute was aimed at thwarting the then-existing practice of impeaching the complainant's testimony with evidence of the complainant's prior consensual sexual activity, which discouraged victims from testifying "because they kn[e]w their private lives [would] be cross-examined." House Legisla-

tive Analysis, SB 1207, July 18, 1974. A complainant's sexual history with others is generally irrelevant with respect to the alleged sexual assault by the defendant. MRE 401. More importantly, a witness' sexual history is usually irrelevant as impeachment evidence because it has no bearing on character for truthfulness. MRE 608.

Generally, irrelevant evidence is inadmissible as substantive evidence. MRE 402. MRE 403 provides that even relevant evidence may be excluded if its probative value is outweighed by prejudicial considerations. The rape-shield statute reflects this evidentiary postulate, but with a significant modification. MRE 403 calls for the exclusion of probative evidence when "substantially" outweighed by prejudicial considerations. In contrast, the rape-shield statute calls for exclusion when the probative value is merely outweighed by prejudicial considerations. After weighing the minimal probative value of evidence of sexual conduct not incident to the alleged sexual assault against the inherent prejudicial and inflammatory effect on the jurors of parading the complainant's sexual history through the court room, the Legislature determined that as a general rule such evidence would be legally irrelevant and inadmissible as a matter of law. *People v Hackett*, 421 Mich 338, 347-348; 365 NW2d 120 (1984).[5]

However, when the proposed evidence relates to the complainant's consensual sexual relations *with the defendant*, the public policy interests in excluding

---

[5] There are limited exceptions to the general exclusionary rule in situations where the evidence is *relevant* for impeachment purposes such as bias, motive, or a pattern of false accusations because it is probative of the complainant's truthfulness. *Id.* at 348-349.

prejudicial, inflammatory, or misleading bad act character evidence are no longer the primary focus of the statute. *People v Perkins*, 424 Mich 302, 307; 379 NW2d 390 (1986). Instead, the focus shifts to materiality and balancing probative value against prejudice. *Id.* at 307-308.

With this background in mind, we turn to the statutory exceptions. Again, the touchstone of the rape-shield statute is relevance. In providing two narrow exceptions to the exclusionary rule, the Legislature premised both exceptions on the threshold determination that the proposed evidence is "material to a fact at issue." MCL 750.520j(1); MSA 28.788(10)(1). First consider subsection b, which allows the admission of evidence that is *material* to prove that semen recovered from the complainant or her resulting physical condition was the result of someone other than the defendant. Such evidence could be *probative* of a defense theory such as misidentification.[6] Likewise, under subsection a, the complainant's consensual sexual conduct with the defendant must be *material* to an issue in the case. In *Perkins*, we found that evidence of a prior sexual encounter between the complainant and the defendant could be *probative* of the defendant's version that the events on the night in question were consensual. *Id.* at 308.

In the instant case, the trial court considered the meaning of the term "past" and determined that arbitrarily limiting evidence of the complainant's consensual sexual relations with the defendant to that occur-

---

[6] See *People v Haley*, 153 Mich App 400, 405; 395 NW2d 60 (1986) (the evidence of adult third-party penetration was relevant to prove that the condition of the eight-year-old girl's hymen may have been caused by someone other than the defendant).

ring before the alleged sexual assault could exclude
relevant evidence.[7] We agree. The rape-shield statute
was grounded in the evidentiary principle of balanc-
ing probative value against the dangers of unfair
prejudice, inflammatory testimony, and misleading
the jurors to improper issues. Where the proposed
evidence concerns consensual sexual conduct with
third parties, the Legislature has determined that,
with very limited exceptions, the balance overwhelm-
ingly tips in favor of exclusion as a matter of law.
However, where the proposed evidence concerns con-
sensual sexual conduct with the defendant, the Legis-
lature has left the determination of admissibility to a
case-by-case evaluation.

It is axiomatic that relevance flows from the cir-
cumstances and the issues in the case. It is primarily
for this reason that we reject the argument that other-
wise relevant evidence becomes legally irrelevant and
inadmissible merely because it occurred after an
alleged sexual assault and not before. The Legislature
did not intend an arbitrary limit on relevant evidence,
and we find that imposing such a time limit would
not faithfully further the legislative purposes of the
rape-shield statute. Accordingly, we hold that "past"
sexual conduct refers to conduct that has occurred
before the evidence is offered at trial.[8]

The partial dissent would not consider "whether
the proffered evidence is relevant and whether its

---

[7] The trial court stated that he would find evidence of consensual sex-
ual relations with the alleged assailant on the day after the alleged sexual
assault to be *more* probative of whether the sexual assault occurred than
evidence of consensual sexual relations on the day before the alleged sex-
ual assault.

[8] This interpretation corresponds to the dictionary definition of "past."
Past is defined as:

prejudicial nature outweighs its probative value," *post* at 492, if the proffered sexual conduct evidence did not "occur[ ] before the alleged assault," *id.* at 493. In addition to the reasons explained above, we reject this interpretation of the rape-shield statute because it runs the risk of violating a defendant's Sixth Amendment constitutional right to confrontation.

This Court has stated:

> The fact that the Legislature has determined that evidence of sexual conduct is not admissible as character evidence to prove consensual conduct or for general impeachment purposes is not however a declaration that evidence of sexual conduct is never admissible. We recognize that in certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation. [*Hackett*, 421 Mich 348.]

Conversely, the partial dissent would hold that *as a matter of law* postincident sexual conduct would *never* be admissible—even if relevant. To the contrary, we believe that determinations of relevance,

---

gone by or elapsed in time . . . of, having existed in, or having occurred during a time previous to the present; bygone . . . gone by just before the present time; just passed . . . . [*The Random House Dictionary of the English Language: Second Unabridged Edition*, p 1419.]

In turn, "present" is defined as:

being, existing, or occurring at this time or now; current . . . at hand; immediate . . . noting an action or state occurring at the moment of speaking. [*Id.*, p 1529.]

Accordingly, dictionary definitions indicate that the term "past" refers to sexual conduct evidence that has occurred before the moment it is offered at trial.

materiality, prejudicial nature, and the defendant's constitutional right to use the proffered evidence, depend on the facts of the case. Accordingly, the rape-shield statute should not be interpreted to foreclose consideration of such issues arbitrarily. Further, *Michigan v Lucas*, 500 US 145, 151; 111 S Ct 1743; 114 L Ed 2d 205 (1991), suggested that an arbitrary interpretation and application of the rape-shield statute's provisions could violate the right to confrontation.

III

This of course does not end our inquiry regarding the admissibility of the proposed evidence. The statute further provides that such evidence is admissible "*only to the extent* that the judge finds that the . . . proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value . . . ." MCL 750.520j; MSA 28.788(10) (emphasis added).

> The determination of admissibility is entrusted to the sound discretion of the trial court. In exercising its discretion, the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation. [*Hackett*, 421 Mich 349.]

We generally review the trial court's determinations of evidentiary issues for abuse of discretion. *Perkins*, 424 Mich 308.

SUBSEQUENT CONSENSUAL SEXUAL RELATIONS

The defendant argues that evidence of subsequent consensual sexual relations between the complainant and the defendant within a relatively short time after the alleged sexual assault would be relevant to whether she was in fact raped. In contrast, the prosecutor argues that evidence of subsequent consensual sexual relations is not relevant in this case because consent is not an issue. The prosecutor further argues that any probative value is minimal because the complainant and the defendant were two married people going through an emotional period after the defendant had filed for divorce. The prosecutor further argues that the marital rape provision, MCL 750.520*l*; MSA 28.788(12), reveals that the Legislature contemplated cases such as this, where married people who were living together would be involved in rape allegations, and, accordingly, subsequent consensual sexual relations would not be unexpected because of "the complexities of human emotion." The prosecutor emphasizes that this evidence would be highly prejudicial because it would divert the jury's attention from the alleged events of the night in question. Both parties' points are well taken.

The rape-shield statute provides that the trial court should balance these considerations in determining whether the proposed evidence is material and whether its probative value is outweighed by its prejudicial nature. On a common-sense level, a trial court could find that the closer in time to the alleged sexual assault that the complainant engaged in subsequent consensual sexual relations with her alleged assailant, the stronger the argument would be that if indeed she had been sexually assaulted, she would not have con-

sented to sexual relations with him in the immediate aftermath of sexual assault. Accordingly, the evidence may be probative. Conversely, the greater the time interval, the less probative force the evidence may have, depending on the circumstances.

Even so, time should not be the only factor. The trial court should also carefully consider the circumstances and nature of the relationship between the complainant and the defendant. If the two did not have a personal relationship before the alleged sexual assault, then any consensual sexual relations after the alleged sexual assault would likely be more probative than if the two had been living together in a long-term marital relationship. Additionally, the trial court could find that there may be other human emotions intertwined with the relationship that may have interceded, leading to consensual sexual relations in spite of an earlier sexual assault.[9] Depending on the circumstances, the trial court may find that these other considerations have intensified the inflammatory and prejudicial nature of subsequent consensual sexual conduct evidence and properly conclude that it should be precluded or limited. Moreover, the Legislature, by the use of the term "unless and only to the extent that" in the rape-shield statute, expressly limited admission of such evidence to what is necessary for the defense. Therefore, the trial court appropriately should limit the scope of sexual conduct evidence where constitutionally possible.

Here, the trial court limited the evidence of subsequent consensual sexual relations to that occurring

---

[9] This is not unlike what often occurs with battered spouses. *People v Christel*, 449 Mich 578; 537 NW2d 194 (1995).

within thirty days of the alleged sexual assault. This complainant, after six years of marriage to her alleged assailant and after having two children with him, consented to sexual relations with him even after she alleged that she was sexually assaulted by him. While such evidence has a fair amount of probative value that the alleged sexual assault never occurred, we also believe that the danger of misleading the jury's focus away from the night in question is significant. We remand to the trial court for further proceedings in light of this opinion with respect to the admissibility of evidence of subsequent consensual sexual relations between the complainant and the defendant.

PARTICULAR SEXUAL ACTIVITY

The defendant argues that evidence of the couple's marital digital-anal sexual activity is relevant to show that on prior occasions the complainant was not offended or humiliated by digital-anal sexual activity and that, if the alleged sexual assault had indeed occurred as suggested by the complainant, this would have been normal sexual activity for the couple. However, the victim's offense or humiliation is not an element of third-degree criminal sexual conduct. Moreover, the fact that the couple engaged in digital-anal sexual activity during their marriage *before* the alleged sexual assault is not probative of the defense theory that the alleged events on the night in question never occurred. "The right to confront and cross-examine is not without limits. It does not include a right to cross-examine on irrelevant *issues*." *Arenda,*

416 Mich 8. Exclusion of this evidence will not violate the defendant's constitutional rights.[10]

We hold that the trial court did not abuse its discretion in precluding the defendant from introducing evidence of prior consensual digital-anal sexual activity, given its highly prejudicial nature and its nonexistent probative value.

IV

We reverse the decision of the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred with CAVANAGH, J.

LEVIN, J. (*separate opinion*). I agree with the majority that "past sexual conduct" includes consensual sexual conduct between the complainant and the defendant after the assault charged in the information. I concur in the reversal of the Court of Appeals for essentially the reasons set forth in the majority opinion. I dissent from the holding that

the trial court did not abuse its discretion in precluding the defendant from introducing evidence of prior consensual digital-anal sexual activity, given its highly prejudicial nature and its nonexistent probative value. [*Ante*, p 489.][1]

---

[10] We note that if the complainant were to testify on direct examination that she and the defendant had never before engaged in this activity, then the evidence may become proper impeachment. MRE 607.

[1] The circuit judge limited the evidence of postassault consensual sexual conduct only to such consensual conduct as occurred within thirty days after the assault alleged in the information. *Ante*, pp 475 and 487-488.

It appears that the postassault consensual sexual conduct occurred within two weeks of the alleged assault, and thus the thirty-day limitation

The evidence of the prior consensual atypical sexual conduct in the instant case is evidence tending to show that before the atypical sexual conduct, alleged in the information to have been nonconsensual, the defendant and the complainant consensually engaged in the same atypical sexual conduct on a number of occasions. Perforce, the probative value of the past atypical consensual sexual conduct outweighs any inflammatory or prejudicial nature of the past consensual atypical sexual conduct.

For the same reason that evidence of the "victim's past [*normal*] sexual conduct with the actor" is, pursuant to the rape-shield statute, probative and admissible as an exception to the strictures of the rape-shield statute,[2] evidence of past *atypical* sexual conduct between them is probative.

The information charges the defendant with engaging in unconsented-to digital-anal sex with his estranged wife. The complainant wife acknowledged that during the marriage, before the assault charged

---

was not protested by the defendant either at the trial or the appellate level. The following occurred at the hearing on the motion in limine:

> *The Court*: And that in terms—you're alleging that there was subsequent sexual conduct within like thirty days of this?
>
> [*Defense Counsel*]: Oh, yes, Your Honor, actually within two weeks I think it is.

Accordingly, whether the thirty-day limitation is proper has not been put in issue in this case.

[2] Although the defense is not consent, but that there was no sexual conduct on the occasion charged in the information, the evidence of past consensual atypical sexual conduct is relevant to negative the inferences jurors might draw, on their own initiative, absent such evidence, that the incident must have occurred as the complainant testified, because she could not have imagined such abnormal sexual conduct, or that this abnormal sexual conduct is just the kind of hostile behavior an estranged husband would perpetrate on his wife to humiliate and subjugate her.

in the information, the complainant and the defendant had engaged in digital-anal sex on a number of occasions, which jurors might conclude, on the basis of such evidence, was normal for them.

Digital-anal sex may or may not be part of the sexual experience of one or more of the jurors who shall be empaneled to try this case. To the extent that it is, the evidence of past consensual digital-anal sex is less prejudicial; to the extent it is not, such evidence is more probative, especially for jurors who may have had little or no experience with digital-anal sex and who, on the basis of such inexperience, might regard digital-anal sex as deviant sexual behavior, and who might conclude—absent the evidence that the complainant and the defendant had consensually engaged on a number of occasions in such atypical sexual conduct—that a woman (the complainant) would not consent to such a penetration of her body.

Resolution of the factual dispute will depend on the jury's assessment of the credibility of the estranged complainant wife and defendant husband. If the evidence of consensual digital-anal sexual activity is, as the majority opines and concludes, "highly prejudicial" to a fair assessment of the wife's credibility, then it is, by the same token, highly probative to a fair assessment of the husband's credibility.

BRICKLEY, C.J. (*concurring in part and dissenting in part*). I write separately to express my partial disagreement with the majority's construction of Michigan's rape-shield law, MCL 750.520j(1)(a); MSA 28.788(10)(1)(a), which generally excludes evidence of the complainant's sexual conduct. However, an exception to the statute permits the admission of "[e]vidence of the victim's past sexual conduct with

the actor" if that evidence is material and if its "preju-
dicial nature does not outweigh its probative
value . . . ." I agree with the majority that the trial
court did not abuse its discretion in precluding the
defendant from introducing evidence of specific acts
of sexual activity between the defendant and the
complainant. I also agree with the majority's charac-
terization of the test balancing prejudice and proba-
tive value. However, I would uphold the Court of
Appeals conclusion that the word "past" as used in
the exception permits the admission only of evidence
of sexual conduct occurring before the alleged
assault.

The majority concludes that the word "past" is
ambiguous because there was disagreement regarding
its meaning among the Court of Appeals judges. In
performing statutory construction, it relies on *People
v Arenda*, 416 Mich 1; 330 NW2d 814 (1982), to con-
clude that the primary purpose of the exception is to
permit the admission of relevant evidence. Although I
do not contest this characterization, I would not
reach the issues whether the proffered evidence is
relevant and whether its prejudicial nature outweighs
its probative value. That analysis need only be per-
formed if the evidence falls within the exception per-
mitting the admission of evidence of past sexual
conduct.

Although this Court does examine the legislative
intent in performing statutory construction, the first
consideration must be the language actually used by
the Legislature. If that language cannot be construed
to further the legislative intent, it is the purview of
the Legislature to amend the statute. Further, a stat-
ute must be construed so as to give every word mean-

ing. "[I]n the interpretation of statutes, effect must be given, if possible, to every word, sentence and section . . . ." *Drouillard* v *Stroh Brewery Co*, 449 Mich 293, 303; 536 NW2d 530 (1995). The result reached by the majority renders the word "past" in the exception nugatory, thereby violating this rule of statutory construction. Accordingly, I must dissent.

The majority finds support for its conclusion in the dictionary definition of "past" as " 'having occurred during a time previous to the present.' " *Ante* at 484, n 8. However, the dictionary definition of "past" makes it meaningless in the context of the statute. In order for evidence of sexual conduct to be admitted at trial, the conduct must necessarily have occurred during a time previous to the trial. It would be impossible to admit evidence of future sexual conduct. The result reached by the majority could have been obtained had the Legislature worded the exception so as to permit the admission of "evidence of the victim's sexual conduct with the actor" or "evidence of the victim's other sexual conduct with the actor," rather than evidence of "the victim's *past* sexual conduct with the actor." However, as the statute is written, in order to imbue "past" with meaning, this Court should find that only evidence of conduct that occurred before the alleged assault may be admitted.

The majority's construction is not possible under the rule requiring that every word in a statute be given meaning. I conclude that the proffered evidence does not fall within the exception to the rape-shield statute permitting the admission of evidence of past sexual conduct because it deals with sexual conduct that occurred after the incident. The evidence should not be admitted under the current wording of the

statute. Accordingly, I would remand the case to the trial court with instructions to apply the rule that "past" refers only to sexual conduct occurring before the alleged assault.