Bernstein, J. (concurring in part and dissenting in part).
I respectfully dissent in part from this Court's opinion, which affirms the disposition of the Court of Appeals on other grounds. This case deals with three separate pieces of evidence: (1) the complainant DM's pregnancy; (2) DM's subsequent abortion; and (3) DM's lack of other sexual partners during the relevant time period. The trial court held that only evidence of DM's pregnancy is admissible, but this Court would instead find that all three pieces of evidence are admissible. I agree with the majority that evidence of DM's abortion and her lack of other sexual partners is not governed by the rape-shield statute and that evidence of DM's lack of other sexual partners is admissible under our rules of evidence. However, I would hold that evidence of DM's pregnancy is governed by the rape-shield statute, MCL 750.520j, and that evidence of DM's abortion is barred by MRE 402 and MRE 403.
First, I agree with the Court of Appeals' implicit holding that the trial court abused its discretion in finding that some of the evidence is inadmissible under MRE 404(a)(3), because the prosecutor does not seek to **344 introduce this evidence as character evidence. Instead, we must then consider whether any of this evidence is admissible under the rape-shield statute.
The first question in considering admissibility under the rape-shield statute is whether the proffered evidence is "[e]vidence of specific instances of the victim's sexual conduct...." MCL 750.520j(1). I agree with the majority that evidence of DM's abortion and DM's lack of other sexual partners does not fall under the rape-shield statute, as that evidence is not evidence of specific instances of the victim's sexual conduct. However, I believe that evidence of DM's pregnancy does fall under the rape-shield statute.
The majority states that "the pregnancy ... evidence alone does not describe a particular or specific sexual encounter. The evidence demonstrates only that at least one act of sexual intercourse occurred in 2014 and does not describe one particular occurrence of sexual conduct." (Emphasis added.) The focus on the verb "describe" here is curious, given that it does not appear anywhere in the statute. Rather, the plain language of MCL 750.520j simply requires that the proffered evidence be "evidence" of a specific instance of the victim's sexual conduct. For the reasons stated in Chief Justice MARKMAN 's concurring opinion, I would find that evidence of *521 DM's pregnancy is evidence of a specific instance of the victim's sexual conduct-the particular sexual encounter that resulted in the pregnancy.[1] As Chief Justice MARKMAN points out, evidence of DM's pregnancy must be presented as evidence of a **345 specific instance of sexual penetration, or else it is irrelevant; if it is not evidence of a specific instance of sexual penetration, then how would it add anything to the criminal trial against defendant? In other words, because the prosecutor charged defendant with one of the counts of first-degree criminal sexual conduct based on an allegation that a specific instance of sexual penetration resulted in DM becoming pregnant, I would find that DM's pregnancy is being presented as evidence of a specific instance of the victim's sexual conduct and evidence of that pregnancy thus falls within the rape-shield statute.
Evidence that falls under the rape-shield statute generally shall not be admitted, subject to two exceptions. The second exception, concerning "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease," is clearly inapplicable here, as the mere fact of a pregnancy cannot, by itself, show the source of semen or pregnancy, and there is nothing to suggest that a disease is at issue. MCL 750.520j(1)(b).[2]
The first exception, concerning "[e]vidence of the victim's past sexual conduct with the actor," presents a **346 more difficult question. MCL 750.520j(1)(a). Clearly, the prosecutor argues that DM's pregnancy is evidence of DM's past sexual conduct with defendant. However, testimony presented about defendant's alleged sexual abuse appears to conflict with the timing of the pregnancy. There are two alleged instances of sexual penetration, one of which the majority concedes could not have been the source of DM's pregnancy, given the timing. But the timing of the other alleged instance of sexual penetration has not yet been firmly established, and defendant alleges that the timing of both instances does not coincide with the timing of DM's pregnancy. Because the plain language of the first exception notes that only evidence of the victim's past sexual conduct with the actor is potentially admissible, I would find that the rape-shield statute requires the prosecutor to support its assertion that DM's pregnancy is linked to past sexual conduct with defendant. Said differently, before evidence of DM's pregnancy can be deemed admissible under the first exception to the rape-shield statute, I would hold that the prosecutor needs to make a threshold showing in the trial court that this evidence concerns past sexual conduct with defendant . The timing of the second alleged instance of sexual penetration has *522 still not been established, and without an idea of the relevant time frame, it is only through mere speculation that one can connect DM's pregnancy to sexual conduct with defendant. Accordingly, I would instead remand to the trial court to allow the prosecutor to make this preliminary showing before the admissibility of evidence of DM's pregnancy is determined.
Turning next to evidence of DM's subsequent abortion, I would find that it is barred by MRE 402 and MRE 403. As an initial matter, should evidence of DM's pregnancy be excluded, the evidence of the abortion would cease to be relevant to the extent it is needed to **347 explain why no DNA evidence is available.[3] Evidence of DM's abortion would, of course, tend to show that sexual penetration with someone had occurred, and would thus be minimally relevant for that purpose. However, in considering the balancing test presented in MRE 403, which states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," the majority focuses solely on the potential prejudice that might fall on DM, not defendant. Given that it is defendant who argues against admission of this evidence because of the potential prejudice to his criminal case, the focus should be on the effect of this evidence on defendant. See People v. Pickens , 446 Mich. 298, 337, 521 N.W.2d 797 (1994) ("This unfair prejudice [of MRE 403 ] refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock.") (quotation marks and citation omitted).
Abortion remains a subject of fierce political and moral debate in modern society, which is not fully captured by the decades-old caselaw on which the majority opinion relies. Although juror sympathies might split more evenly when considering a minor who chooses an abortion after alleged sexual abuse, I find it hard to believe the same would be true when considering defendant, a grown man accused of sexually abusing a minor. Considered in this light, I believe that evidence of DM's abortion would not be highly probative, but would subject defendant to unfair prejudice, **348 and I would hold that such evidence should be excluded under MRE 403.
I agree with the majority that evidence of DM's abortion and lack of other sexual partners is not governed by the rape-shield statute and that DM's lack of other sexual partners is admissible under the Michigan Rules of Evidence. However, I continue to believe that evidence of DM's pregnancy is governed by the rape-shield statute, and that the prosecutor must make a threshold showing that the pregnancy is tied to the specific instance of sexual penetration of which defendant is being accused in order for that evidence to be admissible under MCL 750.520j(1)(a). I also believe that evidence of DM's abortion would subject defendant to unfair prejudice, and should therefore be excluded under MRE 403.

" '[P]ast' sexual conduct refers to conduct that has occurred before the evidence is offered at trial." People v. Adair , 452 Mich. 473, 483, 550 N.W.2d 505 (1996).

In Part III(B) of its opinion, the majority correctly concludes that the proffered evidence is relevant under MRE 402 and that its probative value is not substantially outweighed by the danger of unfair prejudice under MRE 403. As it explains, "[e]vidence of DM's pregnancy, abortion, and lack of other sexual partners makes it more probable that defendant sexually assaulted DM." Indeed, as the majority further explains, this evidence is "highly probative" because the "evidence of DM's pregnancy and abortion definitively demonstrates that sexual penetration occurred" and "[i]f the jury finds credible DM's testimony that she did not engage in sexual intercourse with anyone other than defendant through November 2014, that testimony proves that defendant was the man who sexually assaulted DM." In light of these conclusions, how can the majority conclude at the same time that this evidence is not evidence of a "specific instance" of sexual conduct?

While I agree with the majority that "pregnancy and abortion are not themselves specific instances of the victim's sexual conduct" (or anyone's sexual conduct for that matter), what the majority fails to recognize is that the rape-shield statute applies not just to specific instances of sexual conduct themselves, but more broadly to "[e ]vidence of specific instances of the victim's sexual conduct,"MCL 750.520j(1), and, as the majority does recognize (at least later in its opinion), DM's pregnancy and abortion are indeed evidence of a specific instance of sexual conduct, i.e., the evidence of her pregnancy and abortion "makes it more probable that defendant sexually assaulted DM." And the fact that the rape-shield statute contains an exception for "[e]vidence of specific instances of sexual activity showing the source or origin of ... pregnancy," MCL 750.520j(1)(b), demonstrates that the rape-shield statute generally applies to evidence of a pregnancy because, if it did not as the majority alleges, there would be no need to include an exception for evidence of pregnancy.