PEOPLE v MORSE

Docket No. 204213. Submitted February 4, 1998, at Detroit. Decided August 28, 1998, at 9:10 A.M.

Stephen K. Morse was charged in the Livingston Circuit Court with six counts of first-degree criminal sexual conduct involving an eight-year-old child of his former wife and with one count of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct involving a nine-year-old child of his former wife. The defendant filed a motion in limine seeking to introduce at trial evidence that a former boyfriend of his former wife had pleaded guilty to similar charges involving the children. The defendant argued that the evidence would show that the children's sexual knowledge, inappropriate for their ages, was learned from their mother's former boyfriend, not from the defendant, and that the children had motive to make false charges because they disliked the defendant and their mother's former boyfriend and sought to get rid of the defendant by accusing him of the same conduct that led to the conviction of their mother's former boyfriend. The court, Stanley J. Latreille, J., denied the motion, ruling that the rape-shield statute, MCL 750.520j; MSA 28.788(10), bars the evidence at issue, and stayed proceedings while the defendant appealed. The Court of Appeals denied the defendant's application for leave to file an interlocutory appeal. The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 455 Mich 852 (1997).

The Court of Appeals *held*:

The rape-shield statute generally excludes evidence of a rape victim's prior sexual conduct with persons other than the defendant and of sexual reputation when offered to prove that the conduct at issue was consensual or for general impeachment. However, in certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve the defendant's constitutional right to confrontation. Such evidence is relevant when offered for the narrow purpose of showing that the complaining witness is biased or has an ulterior motive for making a false charge.

Where, as in this case, the complaining witness is a child and evidence of prior sexual conduct between the child and a person other than the defendant is offered to show bias or motive for making a false charge, an in camera hearing must be conducted to determine whether the proffered evidence is relevant and should be admitted. Where a defendant attempts to show that a child's age-inappropriate sexual knowledge was learned not from sexual contact with the defendant but from criminal sexual conduct by another person, the defendant must establish that the sexual conduct of which the defendant is accused is highly similar to that charged against the other person.

Reversed and remanded for an in camera hearing and further proceedings.

1. RAPE — RAPE-SHIELD STATUTE — BIAS OR MOTIVE FOR FALSE CHARGES.

The rape-shield statute does not bar the admission of evidence of a rape victim's prior sexual conduct with persons other than the defendant when the evidence is offered to show that the complaining witness is biased or has an ulterior motive for making a false charge (MCL 750.250j; MSA 28.788[10]).

2. RAPE — RAPE-SHIELD STATUTE — CHILD VICTIMS — IN CAMERA HEARINGS.

A trial court in a criminal sexual conduct case involving a child victim and a defendant seeking the admission of evidence of the child's prior sexual conduct with a person other than the defendant to show bias or an ulterior motive for making a false charge must conduct an in camera hearing to determine the relevancy of the proffered evidence and whether it should be admitted; where the defendant attempts to show that the child's age-inappropriate sexual knowledge was learned not from sexual contact with the defendant but from the criminal sexual conduct of another person, the defendant must establish that the sexual conduct of which the defendant is accused is highly similar to that charged against the other person (MCL 750.250j; MSA 28.788[10]).

*James D. A. Buttrey*, for the defendant.

Before: SAAD, P.J., and WAHLS and GAGE, JJ.

SAAD, P.J.

I

## NATURE OF THE CASE

Charged with seven counts of first-degree criminal sexual conduct[1] and two counts of second-degree criminal sexual conduct[2] against his former wife's two daughters, defendant vehemently denies these charges and contends that the complainants have motive to lie. Defendant appeals the trial court's denial of his pretrial request to introduce evidence that Mr. Wiltse, who lived with the complainants' mother, sexually abused the girls three years before defendant's alleged offenses. Wiltse pleaded guilty to sexual abuse charges and is now serving a prison sentence. Defendant contends that complainants' allegations against him are "highly similar" in nature to Wiltse's previous sexual abuse. Defendant says that if the jury is not allowed to learn of the Wiltse offenses against complainants, then the jury will inevitably conclude that the complainants' highly age-inappropriate sexual knowledge could only come from *defendant* having committed such acts.

The trial court ruled that the proffered evidence *must be excluded* under Michigan's rape-shield statute, MCL 750.520j; MSA 28.788(10), which precludes evidence of prior sexual conduct of the victim. Defendant argues that the rape-shield law is intended to prevent a rape trial from becoming a trial of a victim's morality and sexuality, and thus has no relevance to this case, where defendant seeks only to show that nonconsensual sexual acts are the real source of the two girls' age-inappropriate knowledge.

---

[1] MCL 750.520b; MSA 28.788(2).

[2] MCL 750.520c; MSA 28.788(3).

Defendant also avers that the girls disliked and successfully got rid of Mr. Wiltse by using these similar allegations and that they similarly dislike and want to get rid of him. Thus, according to defendant, the girls' unusual knowledge of sex and their motive will be made clear only if the jury is told about the earlier sexual abuse. Accordingly, defendant asks this court to reverse the trial court's ruling that the rape-shield statute precludes admission of this evidence.

II

FACTS AND PROCEEDINGS

During the preliminary examination, eight-year-old E.A.P.[3] testified that she lived with her grandmother, but that earlier in the year she had lived in two motels with her mother, sister, brother, and defendant, and that

> [defendant] . . . lifted up my . . . nightgown and stuck his hand down my underwear. . . . He put his finger in my private. . . . I was sleeping on the ground and he . . . asked me to get in bed with him. . . . [W]hen I went to face [my sister and brother], he stuck his private into my butt. . . . It was around like four times. . . . He said if I ever told anybody then he would beat my butt.

The other complainant, C.L.P., testified that she was nine years old and gave the same account of her and her sister's past and present living arrangements, adding that one of the periods in a motel included the Easter holiday. She testified that "[defendant] likes to tickle me and he put his hand down my underwear and tickled me, but he tickled my private too. . . . He'd just touch it." She also testified that "Saturday

---

[3] We refer to complainants by initials to protect their identity.

morning. . . . with my nightgown on, [defendant] stuck his thing-a-ma-jig in my butt."

The people charged defendant with three counts of first-degree criminal sexual conduct (finger penetration of vagina/anus) and three counts of first-degree criminal sexual conduct (finger penetration of vagina), regarding E.A.P., and with one count of first-degree criminal sexual conduct (penile penetration of vagina/anus) and two counts of second-degree criminal sexual conduct, regarding C.L.P.

Defendant maintains (1) the acts did not occur and (2) the details provided by the girls are false and are instead the product of sexual assaults perpetrated by one Bradley Wiltse, some three years earlier. According to defendant, Wiltse pleaded guilty of molesting E.A.P. and was accused of doing the same to C.L.P., and the sexual assaults alleged here are highly similar to the acts that occurred with Wiltse.[4] Defendant contends that exclusion of this evidence would violate his Sixth Amendment right to confrontation as well as his right to present a defense.

In denying defendant's motion in limine, the trial court found that this evidence should be excluded under the rape-shield statute, MCL 750.520j; MSA 28.788(10). Because both parties requested a stay if the trial court ruled against them, the trial court stayed proceedings to permit this appeal.

This Court initially denied defendant's interlocutory application for leave to appeal on February 13, 1997. Defendant then sought leave to appeal to the Supreme Court, which remanded the case to this

---

[4] The trial court noted that the prosecutor apparently stipulated that Wiltse's alleged acts were "highly similar" to defendant's alleged acts.

Court for our consideration as on leave granted. 455 Mich 852 (1997).

III

ANALYSIS

Michigan's rape-shield statute, MCL 750.520j; MSA 28.788(10), provides as follows:

> (1) Evidence of specific instances of the victim's sexual conduct . . . shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) Evidence of the victim's past sexual conduct with the actor.
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.
>
> (2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may offer an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

This statute, and its parallel provision in MRE 404(a)(3),[5] constitutes a legislative policy determina-

---

[5] Under MRE 404(a)(3), evidence of a victim's character or a trait of character is not admissible in a criminal sexual conduct prosecution except for "evidence of the victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease."

tion that sexual conduct or reputation regarding sexual conduct as evidence of character and for impeachment, while perhaps logically relevant, is not legally relevant. *People v Hackett*, 421 Mich 338, 346; 365 NW2d 120 (1984), citing McCormick, Evidence (1st ed), § 155. Indeed, as we stated in *People v Powell*, 201 Mich App 516, 519; 506 NW2d 894 (1993):

> Enactment of the Michigan rape-shield statute reflected the Legislature's determination that, in the overwhelming majority of prosecutions, evidence of a rape victim's sexual conduct with parties other than the defendant, as well as the victim's sexual reputation, is neither an accurate measure of the victim's veracity nor determinative of the likelihood of consensual sexual relations with the defendant.

In Michigan, as in our sister states, rape-shield statutes are typically invoked where the victim is an adult. However, our courts and others have ruled on the applicability of rape-shield statutes in cases of child sexual abuse.[6] For example, in *People v Arenda*, 416 Mich 1, 6; 330 NW2d 814 (1982), the people charged defendant with first-degree criminal sexual conduct involving his eight-year-old son. The prosecutor filed a motion in limine to preclude evidence of sexual conduct between the boy and any person other than defendant, although the prosecutor acknowledged that he had no knowledge of such conduct. *Id.* The defendant opposed the motion, because in light of the boy's young age and his detailed

---

[6] See anno: *Admissibility of evidence that juvenile prosecuting witness in sex offense case had prior sexual experience for purposes of showing alternative source of child's ability to describe sex acts*, 83 ALR4th 685 (1991); Note, *The sexual innocence inference theory as a basis for the admissibility of a child molestation victim's prior sexual conduct*, 91 Mich L R 827 (1993); Marcketti, *Rape shield laws: Do they shield the children?*, 78 Iowa L R 751 (1993).

description of events, defendant wanted the right to
introduce evidence, if he found any, of the complain-
ant's sexual conduct with others. *Id.*

The trial court in *Arenda* excluded the evidence on
the basis of the rape-shield statute, and the Supreme
Court upheld this ruling. However, the Supreme Court
recognized that such evidence could be admissible in
certain circumstances:

> In most cases, the relevancy, if any, of such evidence will
> be minimal.
>
> *       *       *
>
> . . . *[T]he only cases in which such evidence can argua-
> bly have more than a de minimis probative value are ones
> involving young or apparently inexperienced victims.*
> These children and others are the ones who are most likely
> to be adversely affected by unwarranted and unreasonable
> cross-examination into these areas. They are among the
> persons whom the statute was designed to protect. [*Id.* at
> 12-13 (emphasis added).]

Importantly, the *Arenda* Court made numerous ref-
erences that the defendant's argument was purely the-
oretical; he had no proof that the boy actually had
any other source of sexual knowledge. *Id.* at 6, 12, 14.
Thus, as the Court itself noted, *on the record
presented there*, the defendant was not denied the
right of confrontation. *Id.* at 14. As later noted in
*Hackett, supra* at 346, the *Arenda* Court "left for
future case-by-case determinations the question
whether under different sets of facts the rape-shield
statute's prohibitions would be unconstitutional as
applied."

In *Hackett*, our Supreme Court again addressed
challenges to the constitutionality of the rape-shield

statute as applied to child sexual abuse cases and
"further explicate[d]" its decision in *Arenda*. *Id.* at
346. The *Hackett* Court stated:

> By enacting a general exclusionary rule, the Legislature
> recognized that in the vast majority of cases, evidence of a
> rape victim's prior sexual conduct with others, and sexual
> reputation, when offered to prove that the conduct at issue
> was consensual or for general impeachment is inadmissible.
> *People v Arenda, supra,* 416 Mich 10. . . . The fact that the
> Legislature has determined that evidence of sexual conduct
> is not admissible as character evidence to prove consensual
> conduct or for general impeachment purposes *is not how-*
> *ever a declaration that evidence of sexual conduct is never*
> *admissible. We recognize that in certain limited situa-*
> *tions, such evidence may not only be relevant, but its*
> *admission may be required to preserve a defendant's con-*
> *stitutional right to confrontation.* For example, where the
> defendant proffers evidence of a complainant's prior sexual
> conduct for the narrow purpose of showing the com-
> plaining witness' *bias,* this would almost always be material
> and should be admitted. Moreover, in certain circum-
> stances, evidence of a complainant's sexual conduct may
> also be probative of a complainant's *ulterior motive* for
> making a false charge. [*Id.* at 347-348 (some citations omit-
> ted and emphasis added).]

*Hackett* concluded that "[t]he determination of admis-
sibility is entrusted to the sound discretion of the trial
court." *Id.* at 349. See also *People v Adair,* 452 Mich
473, 484-485; 550 NW2d 505 (1996) ("[W]e believe
that determinations of relevance, materiality, prejudi-
cial nature, and the defendant's constitutional right to
use the proffered evidence, depend on the facts of the
case. Accordingly, the rape-shield statute should not
be interpreted to foreclose consideration of such
issues arbitrarily.").

The Michigan Supreme Court therefore has made it clear that application of the rape-shield statute must be done case by case and that the balancing between the rights of the victim and the defendant must be weighed anew in each case. Although the *Arenda* Court did not ultimately admit the proffered evidence, it expressly acknowledged that the probative value of a young child's previous sexual abuse can be very significant. *Arenda, supra* at 13. *Hackett* highlights the fact that a defendant's allegations that a victim is biased or has a motive to make false charges *may* shift the balance in favor of permitting the proffered evidence. *Hackett, supra* at 348.

Having reviewed Michigan law, we also look for guidance to out-of-state cases that have grappled with the competing interests of a young person's right to privacy and a defendant's right to confrontation and cross-examination. We find persuasive the analysis in *People v Hill*, 289 Ill App 3d 859; 225 Ill Dec 244; 683 NE2d 188 (1997), where the defendant was charged with sexual abuse (fellatio) of a six-year-old girl and sought to admit evidence that the girl had learned about fellatio from a male playmate. The *Hill* Court insightfully described the problem posed and reasoned as follows:

> The jury was only told of one potential source of A.H.'s [the victim's] uncommon knowledge. The State raised a shield to preclude evidence of any other source. It then proceeded to wield that uncommon knowledge as a potent weapon. . . .
>
> Defendant was rendered defenseless to the inferences of guilt freely drawn from A.H.'s display of sexual knowledge. He could not challenge the inference that the charged abuse occurred. Nor could he challenge the inference that the unique sexual knowledge must have been acquired from

him. Because of the shield there was no evidence from which to infer that A.H. acquired such knowledge in any other way.

\*     \*     \*

We hold that under proper circumstances, evidence of a child witness's prior sexual conduct is admissible to rebut the inferences that flow from a display of unique sexual knowledge. . . .

We further hold that this particular exception must be narrowly drawn. When prior sexual abuse is tendered to explain age-inappropriate knowledge, the proof must be carefully examined before admission.

Contrary to previously noted common perception, child victims are often taken advantage of by more than a single abuser. The rebuttal of inferences created by age-inappropriate sexual knowledge is not an open invitation to indiscriminately present prior episodes of sexual abuse. *The prior sexual conduct must be sufficiently similar to defendant's alleged conduct to provide a relevant basis for its admission.* It must engage the same sexual acts embodied in the child's testimony. Further, if the prior sexual conduct cannot fully rebut the knowledge displayed, if it failed to account for certain sexual details unique to the charged conduct, its admission should be precluded. Simply put, the prior sexual conduct must account for how the child could provide the testimony's sexual detail without having suffered defendant's alleged conduct. [*Id.* at 862-865 (emphasis added; citations omitted).]

Applying this test, the court in *Hill* ultimately precluded the proffered evidence because the record suggested that the previous "abuser" was not sufficiently physically mature to have been the source of the victim's detailed knowledge. *Id.* at 865. However, we find the reasoning in *Hill* to be a thoughtful and logical attempt to balance the competing interests at stake.

The Supreme Court of Wisconsin used a similar test in *Wisconsin v Pulizzano*, 155 Wis 2d 633, 651-652; 456 NW2d 325 (1990),  where the court affirmed the reversal of the defendant's conviction, finding that the defendant's offer of proof provided a good-faith factual basis to support cross-examination of the child abuse victim. There, the court stated that a defendant must make an offer of proof to establish that (1) the prior act clearly occurred, (2) the act closely resembled those at issue, (3) the act is relevant to a material issue, (4) the evidence is necessary to the defendant's case, and (5) the probative value of the evidence outweighs its prejudicial effect. See also *Steward v State*, 636 NE2d 143, 149 (Ind App, 1994), aff'd 652 NE2d 490 (Ind, 1995)  ("we emphasize that both the necessity for and the constitutional right to such cross-examination are limited to these specific and narrow circumstances and clearly do not permit a general inquiry into the victim's sexual past or allow the defendant to posit hypothetical perpetrators, an inquiry which would violate the Rape Shield Statute").

Finally, we note the cautions expressed by the Supreme Court of New Jersey in addressing a similar issue in *State v Budis*, 125 NJ 519, 533; 593 A2d 784 (1991):

> When assessing the prejudicial effect of such evidence, the court should consider the likely trauma to the child and the degree to which admission of the evidence will invade the child's privacy. Such prejudice may be diminished if the evidence can be adduced from sources other than the child. In the present case, as the Appellate Division suggested, the evidence could have been elicited from another witness, the official documents involving convictions arising out of prior abuse, or by stipulation. If the victim is questioned about

the prior abuse, the court should guard against excessive cross-examination. [*Id.* (citation omitted).]

Here, defendant offers two reasons to introduce evidence that Wiltse previously pleaded guilty to similar charges: (1) to show that the girls' age-inappropriate sexual knowledge was not learned from defendant and (2) to show that the girls have a motive to make false charges against defendant. On the basis of the foregoing precedents and reasoning in these decisions, we believe that the trial court may admit such evidence after adhering to certain safeguards.

We now consider what admission procedures will protect the interests of a child and a defendant. *People v Byrne*, 199 Mich App 674; 502 NW2d 386 (1993), outlines the necessary steps for the trial court to determine whether the evidence should be admitted. Although the admissibility of the evidence in *Byrne* turned on factors different from those present here, the admission procedures set forth in *Byrne* are applicable here as well.

In *Byrne*, the defendant was charged with first-degree criminal sexual conduct with a seven-year-old and (before trial) the prosecuting attorney appealed the trial court's rulings permitting: (1) the defendant access to the prosecutor's file on the victim's *father*, who had pleaded guilty to third-degree criminal sexual conduct with the girl and (2) admission at trial of any information about the victim's prior sexual experience. At a hearing, defense counsel admitted that he had no information about the nature of the conduct that the father had committed. *Id.* at 676. Our Court ultimately concluded that the trial court's ruling (that evidence of the victim's prior sexual experience

would be admissible) was premature, and remanded for further consideration. *Id.* at 678, 680. Significantly, there were no bias or motive issues presented there, so they were not factored into the balancing in *Byrne.* However, *Byrne* sets out the steps necessary to obtain and conduct an in-camera hearing:

> The defendant is obligated initially to make an offer of proof regarding the proposed evidence and to demonstrate its relevance. Absent a sufficient showing of relevancy in the offer of proof, the motion for admission, whether presented at trial or in limine, must be denied. . . .
>
> Even where the defendant surmounts that first hurdle, the next step is not admissibility at trial, but an in camera evidentiary hearing to determine the admissibility of the evidence in light of the constitutional inquiry.
>
> \*   \*   \*
>
> At a minimum, defendant in this case would have to establish that the sexual conduct of which he is accused *is highly similar to that charged against the victim's father.* . . . *[I]f the father engaged only in relatively dissimilar sexual conduct, the evidence would be inadmissible as irrelevant. [Id.* at 678-679 (emphasis added).]

Accordingly, Michigan law dictates that an in-camera hearing is appropriate to determine whether: (1) defendant's proffered evidence is relevant, (2) defendant can show that another person was convicted of criminal sexual conduct involving the complainants, and (3) the facts underlying the previous conviction are significantly similar to be relevant to the instant proceeding.

Here, it does not appear that the trial court performed these steps. We therefore remand this case to permit the trial court the opportunity to hold an in-camera hearing to determine whether defendant's

proffered evidence should be admitted. Further, to protect the child's interests in the event the evidence is deemed admissible, we would also suggest the consideration of alternate means of admitting such evidence as outlined in *Budis, supra*. Further, the trial court should detail its findings of fact and conclusions of law in the event we are asked to review its findings.

Reversed and remanded. We retain jurisdiction.