# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 20, 2008

135734

PEOPLE OF THE STATE OF MICHIGAN,
       Plaintiff-Appellant,

v

WAYNE DOUGLAS DABB,
       Defendant-Appellee.

_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 135734
COA: 271566
Dickinson CC: 05-003412-FH

On order of the Court, the application for leave to appeal the December 4, 2007 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

KELLY, J., concurs and states as follows:

I concur in the decision to deny the prosecution's application for leave to appeal because I believe the Court of Appeals correctly analyzed the issues in its unpublished opinion. In holding that the trial court erred by excluding the evidence of the victims' prior sexual acts, it wrote:

> Defendant argues that the trial court erred when it excluded evidence that: the male complainant first accused defendant of abuse after the male complainant's mother caught him abusing his younger cousin; that the male complainant had sexual relations with the younger female complainant (his half-sister); and, that the female complainant was previously abused. Generally, a trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). But a preliminary question of law regarding the admissibility of evidence is reviewed de novo. *Id.* "Questions of statutory interpretation are also reviewed de novo," *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 720; 691 NW2d 1 (2005), as are constitutional issues, *Mahaffey v Attorney General,* 222 Mich App 325, 334; 564 NW2d 104 (1997). Preserved constitutional error requires reversal unless the error is

shown to be harmless beyond a reasonable doubt. *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

Evidence of the sexual conduct of an alleged victim of a sexual assault is strictly limited by MCL 750.520j, and provides in relevant part:

> "(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) Evidence of the victim's past sexual conduct with the actor.
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease."

This statute is reflected in MRE 404(a)(3), providing an exception allowing admission when "[i]n a prosecution for criminal sexual conduct, [it is] evidence of the alleged victim's past sexual conduct with the defendant and [it is] evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease."

However, while the statute does not explicitly allow it, "in certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation." *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1984). "[W]here the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, this would almost always be material and should be admitted." *Id.* "[E]vidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge." *Id.* The decision to admit this evidence is still within the sound discretion of the trial court, which "should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation." *Id.* at 349.

Defendant sought to introduce evidence of the male complainant's prior sexual conduct for the express purpose of showing bias and an ulterior motive for making the charge. Specifically, defendant sought to introduce evidence that the male complainant was caught with his pants off while

molesting his three-year-old cousin, and that it was following this incident that the male complainant first made an accusation against defendant of sexual abuse. Such evidence falls within the constitutional exception to the statute as outlined in *Hackett*. Testimony was admitted that both complainants had a tendency to try to blame others when they got into trouble. The male complainant admitted that when accused of doing something bad, he has in the past indicated that someone else was responsible. Being caught committing sexual assault on a three-year-old child provides a very strong ulterior motive for making a false charge, i.e., to deflect blame for the assault the male complainant had committed.

Given the nature of this case, any evidence relating to the bias of either complainant is significant. Moreover, the prosecutor argued in closing to the jury that "there's been no evidence to suggest that these children avoided some kind of trouble by disclosing the sexual abuse, or that it benefited them in any way whatsoever." Under these circumstances, reversal and remand for a new trial is required. *Carines*, *supra* at 774.

Further, evidence regarding the sexual activity between the complainants and the molestation of the female complainant by her biological father may also be relevant for similar reasons. Arguably, the male complainant's testimony that he obtained knowledge about sex from defendant opened the door to evidence that he obtained this information from a different source, i.e., through sexual relations with his sister who had been the subject of her father's abuse.

However, evidence of the female complainant's prior abuse and her sexual relations with her brother first needs to be analyzed in light of *People v Morse*, 231 Mich App 424, 433-436; 586 NW2d 555 (1998), which holds that the prior sexual history of a child complainant may come in, despite the rape-shield statute, and even in absence of evidence of bias, to offer an alternative source for a child complainant's sexual knowledge that otherwise would be fairly damning evidence of a defendant's guilt. *Morse* requires that, prior to the admission of such evidence, the trial court must hold,

> "an in-camera hearing . . . to determine whether: (1) defendant's proffered evidence is relevant, (2) defendant can show that another person was convicted of criminal sexual conduct involving the complainants, and (3) the facts underlying the previous conviction are significantly similar to be relevant to the instant proceeding. [*Id*. at 437.]"

The trial court in this case did not hold any such hearing and so, on remand, we order the trial court to do so. *Id*. at 437-438. [*People v Dabb*,

unpublished opinion per curiam of the Court of Appeals, issued December 4, 2007 (Docket No. 271566).]

WEAVER, J., dissents from the denial order and would grant leave to appeal.

CORRIGAN, J., dissents and states as follows:

I would grant the Attorney General's application for leave to appeal the Court of Appeals decision reversing this criminal sexual conduct conviction. The Court of Appeals ruled that the trial court abused its discretion by excluding evidence of prior sexual conduct under MCL 750.520j, the "rape-shield" statute. Specifically, the Court of Appeals held that the trial court erred in excluding evidence of the prior sexual abuse of one victim, sexual conduct between the victims, and an alleged sexual assault committed by one victim. In my view, the trial court properly determined that the evidence defendant sought to admit did not satisfy the standards for admissibility of prior sexual conduct in MCL 750.520j. Moreover, the excluded evidence did not infringe defendant's right of confrontation, US Const Am VI, because the evidence defendant sought to admit was not relevant to rebut claims that the victim obtained unique sexual knowledge from defendant.[1] Nor was it relevant to show bias or motive.[2] To the extent that the excluded evidence might have been minimally relevant, the prejudicial and inflammatory nature of the evidence far exceeded any probative value, justifying exclusion under MRE 403.[3] Therefore, I would grant leave to determine whether the trial court acted within the range of principled outcomes in excluding the evidence.[4]

## I.      Factual Background.

Defendant was charged with four counts of second-degree criminal sexual conduct (CSC II)[5] for having sexual contact with a person under the age of 13. These charges stemmed from allegations of sexual abuse by defendant's two stepgrandchildren, a girl and a boy, who were approximately six and nine years old, respectively, when they first reported the abuse. The victims were stepsiblings.

---

[1] *People v Morse*, 231 Mich App 424, 433-436 (1998).

[2] *People v Hackett*, 421 Mich 338, 348 (1984).

[3] MRE 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[4] *Maldonado v Ford Motor Co*, 476 Mich 372, 388 (2006).

[5] MCL 750.520c(1)(a).

Defendant's wife provided day care for the victims and other children in her home for several years. In 2000, the boy told his mother that defendant had sexually touched him. Approximately three days later, the girl made a similar allegation. The victims' mother did not report these allegations to the police and continued to send her children to day care at defendant's home.

Four years later, in April 2004, the victims were placed in a foster home because their stepfather had physically abused them. Approximately one week after moving into their foster home, the victims told their foster mother that defendant had sexually abused them. The foster mother reported the allegations to the Dickinson County Department of Human Services. A criminal investigation followed, leading to the instant CSC II charges against defendant. Some time after telling their foster mother about defendant's abuse, but before the trial, the victims admitted to a Department of Human Services caseworker that they had engaged in sexual activities with each other.

Relying on the rape-shield statute, the prosecutor moved in limine to exclude evidence of the children's sexual activities with each other and the girl's prior sexual abuse by her biological father when she was four years old.[6] The trial court granted the prosecutor's motion. Defendant then moved to admit the same evidence in order to show bias or motive. The trial court denied defendant's motion.

During the trial, defendant sought to introduce testimony from the victim's mother to explain the circumstances of the incident in 2000 when the victims first informed their mother of defendant's sexual abuse. The victims' mother contended that she caught her son with his pants off on top of his three-year-old cousin and that when she asked him what he was doing, he said that defendant had taught him that. Defendant argued that this evidence was admissible to show the boy's motive in making sexual abuse allegations against defendant as a way to avoid punishment for his own sexual misconduct.

The trial court ruled the testimony inadmissible. Therefore, the victim's mother eliminated from her testimony any reference to the sexual nature of the incident. Instead, she testified that she had caught the boy "doing a bad thing" and that he had responded by making a "statement" about defendant that he "had done something to him." She testified that her son frequently blamed others when he was facing punishment.

Defendant testified on his own behalf, denying all allegations of sexual abuse. Throughout trial and in closing argument, defendant vigorously contended that the victims were liars who made up stories whenever they were in trouble. Despite these repeated attacks on the victims' credibility, the jury convicted defendant as charged.

---

[6] The biological father pleaded nolo contendere to attempted CSC II.

## II.     Legal Analysis.

MCL 750.520j provides:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct *shall not be admitted* under sections 520b to 520g *unless and only* to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a)     Evidence of the victim's past sexual conduct *with the actor*.
>
> (b)     Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.
>
> (2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). [Emphasis added.]

The trial court squarely complied with the strict requirements of MCL 750.520j by excluding the evidence of the girl's previous sexual abuse, the evidence of sex acts between the two victims, and the evidence involving the boy's cousin. Evidence of sexual history is only admissible if: (1) the evidence involves the victim's past sexual conduct with the actor; or (2) the evidence involves specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease. Even if either of those situations is applicable, the evidence still must be excluded unless the evidence is material to a fact at issue and the inflammatory or prejudicial nature of the evidence does not outweigh its probative value. The statute plainly states that any other sexual history evidence "*shall not be admitted*."

None of the evidence defendant sought to admit satisfies the requirements for admissibility established by the rape-shield statute. The prior sexual conduct defendant sought to admit did not involve prior sexual conduct with defendant. Rather, it involved acts with people other than defendant, namely, the girl's sexual abuse by her stepfather, the victims' sex acts with each other, and the incident between the boy and his cousin. Moreover, defendant did not seek to admit the evidence to explain the source or origin of

semen, pregnancy, or disease. Under the plain language of the statute, the trial court did not abuse its discretion in excluding this evidence.

Nevertheless, the Court of Appeals held that the evidence was admissible to show bias and an ulterior motive for making the sexual abuse charge against defendant. In *People v Hackett*, 421 Mich 338, 348 (1984), this Court explained that evidence otherwise excluded under the rape-shield statute might be required to be admitted to preserve a defendant's constitutional right to confrontation. The Court limited those circumstances to "the narrow purpose of showing the complaining witness' bias" or to show "a complainant's ulterior motive for making a false charge."[7] We also explained, however, that

> [t]he determination of admissibility is entrusted to the sound discretion of the trial court. In exercising its discretion, the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation.[8]

Ultimately, "[c]lose questions arising from the trial court's exercise of discretion on an evidentiary issue should not be reversed simply because the reviewing court would have ruled differently. The trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion."[9]

Defendant sought to admit testimony of three different incidents of prior sexual conduct. The first involved the girl's sexual abuse by her father when she was four years old. The prosecutor did not contend that the girl had unique sexual knowledge that could only have been obtained through the acts allegedly committed by defendant. Therefore, prior abuse of this child was irrelevant.[10] Nevertheless, the Court of Appeals opined that the boy may have obtained his sexual knowledge from the girl, rather than defendant, and therefore the evidence may have been relevant. The Court of Appeals' bootstrapping of the girl's abuse to the boy in order to support admissibility is also irrelevant. The prosecutor never contended that the boy had sexual knowledge that could only have been

---

[7] *Id*.

[8] *Id.* at 349.

[9] *People v Smith*, 456 Mich 543, 550 (1998) (citation omitted).

[10] In *Morse*, *supra* at 433-436, citing *People v Hill,* 683 NE2d 188 (1997), the Court of Appeals held that the prior sexual history of a child complainant may be admissible to offer an alternative source for the child's sexual knowledge, but that this exception must be narrowly interpreted.

obtained through defendant's sexual abuse.[11] Evidentiary issues are left to the sound discretion of the trial court. Here, the trial court acted within the range of principled outcomes in holding that the evidence was inadmissible. In reversing the trial court, the Court of Appeals merely substituted its judgment for that of the trial court and engaged in speculation outside the record.

Defendant also sought to admit testimony that the victims had engaged in sexual acts with one another. Defendant contended that the victims were motivated to allege sexual abuse by defendant to their foster mother in order to deflect punishment for their inappropriate actions. The record does not support any such inference. At the time the victims told their foster mother about defendant's sexual abuse, they had not disclosed to her that they had committed sexual acts with one another. They had no motive to lie about the sexual abuse because they were not facing any punishment from anyone at that time. Rather, the foster mother testified that the children only disclosed the abuse because they felt comfortable with her and "just started opening up." The foster mother, who had 20 years of experience working with children, testified that the children were very sad, scared, fearful, and hurt when telling her about the abuse. Because the evidence failed to establish any motive for the children to lie, the testimony regarding the victims' sexual acts did not fall within the confrontation clause exception to the rape-shield statute. Therefore, the trial court properly excluded the evidence.

Moreover, any minimal relevance would have been offset by the prejudicial nature of such testimony. MRE 403 allows a trial court to preclude evidence offered for any purpose when the prejudice caused by the evidence will outweigh its probative value.[12]

---

[11] Defendant contends that the boy's testimony opened the door to evidence that he obtained sexual information from a source other than defendant:

> *Prosecutor*:  . . . Let's talk about the time you told your mom when you were in Ishpeming. Was Scott [stepfather] around?
>
> *Witness*:  No.
>
> *Prosecutor*:  Okay, was [the victim's sister] around?
>
> *Witness*:  Um, no. No one was around. I was sitting on the couch in my auntie's living room, and – 'cause she was talking to me, and I went in and she asked me how I knew about that kind of stuff, and I told her what happened between me and my Grandpa Wayne [defendant].

The victim's testimony was not responsive to the prosecutor's question and no other mention was made of this testimony throughout the remainder of the trial.

[12] MRE 403; see also *Delaware v Van Arsdall*, 475 US 673, 679 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other

The testimony that the two child-victims had engaged in sexual acts with each other would have been highly inflammatory. Defendant merely hoped to shock the jury with allegations that the stepsiblings were sexually deviant.

Finally, defendant sought to admit evidence that the first time the boy told his mother about defendant's sexual abuse occurred when his mother discovered the victim lying with his pants off on top of his three-year-old cousin. When seeking to admit evidence of this incident, defendant contended that the victim accused defendant of abuse in order to escape punishment for his conduct. This argument, however, is premised on the contention that defendant never sexually assaulted the victim and that the victim was, in fact, lying when making that statement. It is just as, if not more, probable that the victim learned about the sexual conduct from defendant and was repeating it with his cousin. The victim's mother never reported the allegation of abuse, so the authorities never investigated whether there was any merit to the victim's accusation. Therefore, defendant was not seeking to introduce evidence of a *false* accusation of sexual abuse. He was seeking to introduce evidence of an accusation of sexual abuse that was simply ignored. Because the evidence sought to be introduced could be interpreted as either a propensity to lie or evidence of a history of abuse, the evidence was irrelevant to establish motive. Therefore, this evidence did not qualify as an exception to the rape-shield statute and the trial court did not abuse its discretion in excluding it.

Even if this evidence had been admissible, however, it had, at best, minimal probative value. That probative value could not offset the significant prejudice that would have occurred if the victim's mother had been allowed to testify that her son had lied about the abuse in order to avoid punishment for his own sexual deviancy, especially because no evidence supported the mother's contention that her son was lying. In fact, the mother's own testimony refuted her contention that she believed her son was lying about the abuse in order to avoid punishment. She testified that she did not have any fears about leaving her children with defendant because she had discussed her son's accusations with defendant and his wife *and they agreed that defendant would never be alone with the children*. If the victim's mother was truly convinced that her son was lying, there would have been no need for her to separate her son from defendant. Because the evidence failed to establish motive to lie about the sexual abuse and any probative value was outweighed by its prejudicial effect, the trial court did not abuse its discretion in excluding testimony of the victim's conduct with his cousin.

All the evidence of prior sexual conduct that the defendant sought to introduce was irrelevant and was barred by the rape-shield statute, and excluding the evidence did not create a Confrontation Clause issue. Assuming the admissibility issues in this case were close questions, however, this Court has explained that "[c]lose questions arising

things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.").

from the trial court's exercise of discretion on an evidentiary issue should not be reversed simply because the reviewing court would have ruled differently. The trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion."[13]

### III.    Conclusion.

The trial court properly excluded the evidence of the victims' prior sexual acts. Those acts did not satisfy the requirements for admissibility under the rape-shield statute and they did not qualify as a Confrontation Clause exception to the statute. The defense merely sought to introduce the testimony of prior sexual acts to call the victims' credibility into question. The rape-shield statute plainly prohibits the admission of this type of evidence. Therefore, I believe the Court of Appeals erred in reversing and remanding for a new trial. I would grant the Attorney General's application for leave to appeal.

YOUNG, J., would grant leave to appeal.

---

[13] *Smith*, *supra* at 550.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 20, 2008

*Corbin R. Davis*

Clerk